United States District Court
Southern District of Texas

**ENTERED**

March 18, 2026

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

William B.,[1]                    §
    *Plaintiff,*            §
              §
              §   Civil Action H-24-4454
v.                               §
              §
Frank J. Bisignano,[2]            §
Commissioner of the Social       §
Security Administration,         §
    *Defendant.*           §

## MEMORANDUM AND ORDER

William B. appeals the Social Security Administration Commissioner's final decision denying his application for Social Security benefits. ECF No. 1. Pending before the court are William's Motion for Summary Judgment, ECF No. 12; and the Commissioner's Cross Motion for Summary Judgment, ECF No. 14. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF Nos. 8, 9. William's Motion for Summary Judgment is **DENIED**. The Commissioner's Motion for Summary Judgment is **GRANTED**. The Commissioner's final decision is **AFFIRMED**.

### 1. *Procedural Posture*

On January 22, 2021, William filed an application for disability insurance benefits (DIB) under Title II of the Social

---

[1] In light of guidance received from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which states that there are significant privacy concerns in social security cases, the court refers to the Plaintiff only by their first name and last initial.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano is substituted as the defendant in this suit.

Security Act. Tr. 318–20. William alleged that his disability began on July 30, 2019, due to major depressive disorder (MDD), aortic aneurysm, pre-diabetes, and problems with his lower back and feet. Tr. 14, 89, 374.

The SSA denied William's application at the initial level on July 20, 2021, and upon reconsideration on August 23, 2022. Tr. 120–23, 126–29. Administrative Law Judge (ALJ) Helen Strong held a hearing on William's claim by phone on January 19, 2024. Tr. 44–87. William and his counsel were present for the hearing, along with two medical experts (MEs), and a vocational expert (VE). Tr. 44–45.

During the hearing, as an initial matter, the parties discussed two procedural issues. First, William's attorney moved to amend the onset date of disability and to close the period of disability. Tr. 51. William's attorney requested to start the period of disability on May 13, 2020, and end it on January 15, 2022, when William returned to full-time employment. *Id.* Second, the ALJ acknowledged that William had filed a pre-hearing brief. Tr. 52; *see also* Prehearing Memorandum, Tr. 461–66. The ALJ explained that due to time constraints, she would review the brief after the hearing, with the requested closed period in mind. Tr. 52.

The parties then discussed William's physical and mental impairments, as well as his education and work history. As to education, William testified that he completed four or more years of college. Tr. 50. As to his impairments, William testified that he was first diagnosed with aortic valve deterioration in April or May of 2019. Tr. 54. William's attorney described William's medical condition during the closed period, which included heart and back problems, a seizure, and infections. Tr. 52–53. She explained that in January 2022, after treatment for his medical conditions, William was able to return to work. Tr. 53.

Because William did not allege any work-related mental impairments, the court focuses its discussion on his physical impairments. *See* Tr. 65. An ME, Dr. Sanjay Krishnan, testified about William's physical impairments based upon his review of William's medical record and testimony. Tr. 53–61. Dr. Krishnan stated that William had severe impairments of aortic stenosis, status post-valve replacement, aortic aneurysm, hypertension, hypolipidemia, and coronary artery disease. Tr. 55. He stated that William had non-severe impairments of obstructive sleep apnea, degenerative disc disease of the lumbar spine, heel ulcers, and a history of left shoulder rotator cuff surgery. Tr. 55–56. Dr. Krishnan testified that he considered Listings 4.1, 4.02, 4.04, and 3.14, and that he did not believe William met or equaled a Listing. Tr. 57. Dr. Krishnan also testified that William's medical history supported a sedentary level of exertion during the closed period because William experienced heart-related symptoms with only minimal exertion. Tr. 57–58.

A Vocational Expert (VE) testified about William's past work. Tr. 67 (citing William's Work History Report, Tr. 391–99). As classified by the Dictionary of Occupational Titles (DOT), William's job as a field supervisor in oil-and-well services is a skilled (SVP 7), light exertion position. Tr. 67. However, the VE testified that William performed the job at a medium-exertional level. *Id.* William's prior job as a marketing manager in oil field services is a skilled (SVP 8) position, generally performed at the sedentary level, but performed by William at the light exertional level. Tr. 68. His prior job as a regional manager in oil field services is a skilled (SVP 8) position, generally performed at the sedentary level, but performed by William at the medium exertional level. *Id.* The VE classified William's position as a global technical advisor under the closest DOT title to that occupation, which was as a consultant. *Id.* The consultant position is skilled (SVP 6), and it is

generally performed at the light exertional level, but it was performed by William at the medium exertional level. Tr. 69.

The ALJ asked the VE a series of hypothetical questions, in which the VE was to consider a hypothetical claimant, described as a person of William's same age, education, and work experience. The first hypothetical is relevant here. In it, the ALJ instructed the VE to consider a hypothetical claimant, as previously described, who was limited to the sedentary exertional level. Tr. 69–70. That is, limited to frequently lifting, carrying, pushing, or pulling less than ten pounds; occasionally lifting, carrying, pushing, or pulling ten pounds; standing or walking, with normal breaks, for about two hours of an eight-hour workday; sitting, with normal breaks, for about six hours of an eight-hour workday; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; and never climbing ladders, ropes, or scaffolds. *Id.* The VE testified that such a hypothetical claimant would be able to perform William's past work as marketing manager and as a regional manager, as those jobs are customarily performed and described in the DOT (as sedentary positions). Tr. 70. However, the VE stated that William would not be able to perform those roles as he had actually performed them (as light exertion positions). *Id.* The VE testified that William does not have any skills that are transferrable to other skilled, sedentary occupations under the standard set in Social Security Ruling (SSR) 82-41. Tr. 71–72.

On cross-examination, William's lawyer questioned the VE about whether the DOT's "generic job description[s]" accurately reflected William's past work in the oil-and-gas industry. Tr. 79–80. The VE testified that both positions, as described in the DOT, are the closest match to the job responsibilities that William described performing. *Id.* The VE also clarified that he testified to how the position is customarily performed, as well as how William

actually performed it. Tr. 81–82. Thus, according to the VE, while William performed his work as a marketing manager and regional manager at the light exertional level, both positions are classified as sedentary because the DOT "classifies work at the exertional level where it is most often performed." Tr. 82.

After William's attorney cross-examined the VE, she questioned William about the nature of his work as a marketing manager and regional manager. Tr. 83–84. William testified that as a marketing manager, he stayed in the office "the majority of the time," but he also had to assist with setting up for events, which required him to lift and climb ladders. Tr. 83. William testified that as a regional manager, he did "everything as far as operations," which included travel and field visits. Tr. 84. William's attorney argued that William's jobs were "really very industry specific" and were "really more of a composite job." *Id.* Under agency policy, a "composite job" is one that has "ha[s] significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT." SSA, *Program Operational Manual System* (POMS) DI 25005.020(B).

The ALJ asked the VE whether his testimony had changed based on William's testimony and his attorney's arguments. Tr. 85. The VE responded, "my role is to explain to you how the claimant performed his or her occupation and then to tell you based on the information in the [DOT] how it is most often customarily performed, and that is what I did." *Id.* William's attorney stated she had no further questions, but she made a "general objection," that William "would not be able to perform a regular marketing job or a regional sales job and that he had no experience doing either of those." *Id.* After William's attorney reiterated that she did not have any more questions, the ALJ closed the hearing and record. Tr. 86.

On February 19, 2024, William's counsel submitted a twenty-four-page document, entitled "Post-Hearing Memorandum of Law and Objections to the Vocational Witness' Testimony," to the ALJ. Tr. 475–98. In the brief, William objected to the VE's classification of his past work as a marketing manager. Tr. 475–77. William has acknowledged, in his briefing before this court, "that many of the duties that [he] described in the work history report align with the DOT's description of the [marketing manager] occupation." ECF No. 12-1 at 13. However, William argued in his post-hearing brief to the ALJ that the VE's classification of William's past work "fail[ed] to take into account all the entire duties the claimant reported to performing at these jobs including the lifting [weight] duties he had . . . ." Tr. 475. Because of this, William argued that the VE should have classified the role as a composite job. *Id.* He attached to his brief a report completed by a vocational counselor, Carrie Benchich. Tr. 495–98. Ms. Benchich classified William's past work as a "composite job" comprised of two DOT occupations—marketing manager and clerk. Tr. 497.

The ALJ issued her decision on March 25, 2024. Tr. 11. She granted William's request to amend the period of disability to a closed period—from May 13, 2020, to January 15, 2022. Tr. 14. The ALJ found that William was not disabled during the closed period of disability. Tr. 11, 14. The ALJ did not directly address, nor rule on, William's post-hearing objections and rebuttal evidence. However, she did acknowledge the existence of the document by including it as "Representative Correspondence" in the decision's exhibit list. Tr. 30.

William requested review of the ALJ's decision, which the Appeals Council denied on September 17, 2024. Tr. 1. William timely filed a complaint in federal court on November 13, 2024. ECF No. 1.

6

### *2. Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4).

This court's review of the ALJ's disability determination is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). The court "ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Id.* "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

*Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision, but it may not reweigh the evidence or substitute its judgment. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. Analysis

#### A. Step One

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). A person engaged in substantial gainful activity is not disabled, regardless of their medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b).

The ALJ found that William did not engage in substantial gainful activity during the closed period of disability, from May 13, 2020, through January 15, 2022. Tr. 17. This finding is not in dispute.

#### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments, or any combination thereof, is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (citing 20 C.F.R. § 404.1509). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment is "not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Keel*, 986 F.3d at 555 (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "A person who does not have a

'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that William had severe impairments of aneurysm of aorta or major branches, ischemic heart disease, chronic heart failure, and a history of respiratory failure. Tr. 17. The ALJ's findings are supported by substantial evidence and are not in dispute.

### C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). 20 C.F.R. § 404.1520(a)(4)(iii). The Listings describe impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a). The claimant will be found disabled if the claimant's impairments meet or equal all of the specified criteria of one of the Listings. 20 C.F.R. § 404.1520(d); *Whitehead*, 820 F.3d at 781. The claimant has the burden of establishing that their impairments meet the criteria of the Listing. *Whitehead*, 820 F.3d at 781.

The ALJ found that William did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listings. Tr. 65–66. In making this conclusion, the ALJ relied on the objective medical evidence and ME testimony. Tr. 19–20. One ME, Dr. Krishnan, testified that based upon his review of William's medical records, Listings 4.10, 4.04, 4.02, and 3.14 were relevant to William's physical impairments. Dr. Krishnan testified that William's physical impairments do not meet or equal the severity requirements of any of the relevant Listings.

The ALJ determined that Dr. Krishnan, who is board certified in internal medicine, is familiar with the Listings and the process of evaluating Social Security DIB claims, and that his opinions were based upon his review of William's record. Tr. 21. The ALJ found that Dr. Krishnan's opinion was consistent with and supported by the objective medical evidence. *Id.* The ALJ therefore found Dr. Krishnan's opinion as to William's physical impairments persuasive. *Id.*

The ALJ's step-three determination is supported by substantial evidence. William does not dispute the step three findings or point to any evidentiary or legal error in the ALJ's step three findings. Having reviewed the record and the briefing, the court detects no error—legal or factual.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e) (citing 20 C.F.R. § 404.1545). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)). The RFC determination is based on "the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Id.* (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also* 20 C.F.R. § 404.1546(c).

The ALJ determined that William had the RFC to perform a less-than-sedentary level of exertion, which meant that, during the closed period, William could:

> Lift [] or carry 10 pounds occasionally and less than 10 pounds frequently; stand and or walk with normal breaks for a total of two hours in an eight hour

10

workday; sit with normal breaks for a total of about six hours in an eight hour workday; push and/or pull within those stated exertional limitations. [As to] postural limitations, [William] can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; but can never climb ladders, ropes, and scaffolds.

Tr. 21.

In support of her RFC finding, the ALJ considered the entire record, including William's function report and medical records, and the hearing testimony of William, the two MEs, and the VE. The ALJ explained that, although William's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. Tr. 22.

The ALJ found that William's statements about the intensity, persistence, and limiting effects of his symptoms were not consistent with his reported activities during the period of disability. Tr. 22. William stated that he was able to independently perform his daily-living activities during the period of disability. *Id.* (citing Tr. 382–90, 410–17; Hearing Testimony, Tr. 44–87). Those activities included attending appointments, preparing meals, performing household chores, interacting with friends, driving, exercising, and shopping. *Id.* In April 2021, William reported to a doctor that he traveled internationally and walked a lot during the trip. *Id.* (citing Tr. 1473–76). In June 2021, he reported to a consultative examiner that he was actively pursuing employment. *Id.* (citing Tr. 725–28).

The ALJ considered the initial- and reconsideration-level opinions of the reviewing state agency consultants. Tr. 23. The ALJ stated that on initial review, the state agency medical consultant, Dr. Laurence Ligon, found that William was able to

11

perform his past work as it was actually performed. *Id*. The ALJ noted that Dr. Ligon determined that William had an RFC for a light level of exertion, limited by occasional postural activities. *Id*. The ALJ concluded that Dr. Ligon's opinion was not persuasive in light of hearing testimony, which, according to the ALJ, supported greater exertional limitations. *Id*. The ALJ also found the opinion of the state agency psychological consultant to be persuasive to the extent that it classified William's mental impairment as "non-severe." *Id*.

The ALJ noted that there were no residual functional capacity assessments associated with William's claim on reconsideration. Tr. 24 (citing Tr. 107–13). The ALJ stated that the state agency medical consultant, Dr. Kavitha Reddy, determined that there was insufficient evidence to determine William's claim. *Id*. The ALJ observed that Dr. Reddy noted that William had twice failed to keep his appointment for an internal medicine consultative examination. *Id*. The ALJ concluded that Dr. Reddy's opinion was not persuasive because the record supports the finding that William had severe physical impairments and non-severe mental impairments during the period of disability. *Id*.

The RFC was determined according to the appropriate legal framework and is supported by substantial evidence. The court finds no error—legal or factual—in the ALJ's RFC assessment. William does not contest the RFC determination. ECF No. 12-1 at 5.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform their past work by comparing the RFC with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f); *see also Perez*, 415 F.3d at 462. To demonstrate that they are disabled, the claimant must show that they lack the RFC to perform: (1) "the actual functional demands and job duties of a particular past

relevant job;" or (2) "the functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982).[3] If the ALJ determines that the claimant cannot perform their past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1).

The ALJ posed a hypothetical to the VE during the hearing that contained all of the limitations in the RFC that the ALJ ultimately found. Tr. 24. The VE testified that a person of the same age, education, past work history, and RFC as William, during the closed period of disability, could perform William's past work as a marketing manager as that position is generally performed in the national economy. *Id.* Based on that testimony, the ALJ found that William was not disabled during the closed period of disability. Tr. 25.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and because William's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-four determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the

---

[3] SSR 82-61 was rescinded and replaced by SSR 24-2p in June 2024. SSR 24-2p, 2024 WL 3291790 (June 6, 2024). However, at the time of William's hearing in January 2024, the effective Ruling was SSR 82-61, so it applies here. In any event, regardless of which Ruling applies, the result remains the same. *Compare* SSR 82-61, 1982 WL 31387, at *2 (as quoted), *with* SSR 24-2p, 2024 WL 3291790, at *4 ("We determine whether an individual can perform their [past relevant work] by considering whether the individual retains the RFC to meet the functional demands of any of their [past relevant work] as they actually performed it or as it is generally performed in the national economy.").

limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination).

William argues that the ALJ erred at step four by failing to address William's post-hearing brief, vocational rebuttal evidence, and objections. ECF No. 12-1 at 10 (citing Tr. 475–98). In his post-hearing brief, William objected to the VE's classification of his past work as a marketing manager, and argued that the VE should have classified the position as a "composite job." Tr. 475–77

Agency policy requires ALJs to rule on objections. SSA, *Hearing, Appeals and Litigation Law Manual* (HALLEX) § I-2-6-74(b). The ALJ may do so "during the hearing, in narrative form as a separate exhibit, or in the body of the decision." *Id*. While HALLEX is merely agency policy, when individual rights "are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Morgan v. Colvin*, 803 F.3d 773, 777 (5th Cir. 2015). Several courts have held that an ALJ commits legal error by failing to address a claimant's post-hearing objections. *See, e.g.*, *Nunley v. Berryhill*, No. 17-0072, 2018 WL 1167700, at *7 (S.D. Tex. Feb. 14, 2018) ("The court finds merit in Plaintiff's argument that ALJ Dowd committed a legal error by failing to address and rule on Plaintiff's post-hearing objections."); *Cortez v. Berryhill*, No. 17-1493, 2018 WL 4103622, at *2 (S.D. Tex. July 23, 2018) ("The Court concludes that the ALJ violated HALLEX . . . and therefore committed a legal error.").

The ALJ did not acknowledge nor rule on William's post-hearing objection in her decision or in narrative form as a separate exhibit. Accordingly, because the ALJ failed to address William's objection, the ALJ erred.

However, "courts may not reverse and remand for failure to comply with these internal procedures without first considering whether the error was harmless." *Treadaway v. Berryhill*, No. 17-

14

1093, 2018 WL 3862106, at *4 (S.D. Tex. Aug. 13, 2018) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000)). To justify the decision to vacate the Commissioner's decision, the court must find that the claimant's substantial rights were violated. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "Procedural improprieties . . . constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Id.* Stated differently, a claimant "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

William objected to the VE's classification of his past work and asserted that the VE should have classified it as a "composite job." Tr. 475. William acknowledged that while the DOT's marketing-manager description accounted for many of his work duties, it did not account for all of them. *Id.*; *see also* ECF No. 12-1 at 13. William explained, as an example, "the description does not include things like setting up for marketing and sales events by climbing ladders or lifting [twenty] pounds." ECF No. 12-1 at 13. He included with his brief a report from a vocational counselor, Carrie Benchich. Tr. 495–98. Ms. Benchich concluded that William's role as Senior Marketing Manager was a "composite job" comprised of two DOT occupations—marketing manager and clerk. Tr. 497.

Again, a "composite job" is one that involves "significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT." SSA, *Program Operations Manual System* (POMS) DI 25005.020(B). A claimant's prior job "may be a composite job if it takes multiple DOT occupations to locate the main duties of the [prior job] as described by the claimant." *Id.* (emphasis added). "A job may involve duties beyond what the

15

[DOT] outlines without being a composite job, such as where a claimant's past work 'may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.'" *Finch v. Comm'r, Soc. Sec. Admin.*, No. 23-13417, 2024 WL 2368475, at \*2 (11th Cir. May 23, 2024) (citing SSR 82-61). A claimant is "not disabled" at step four if they are capable of performing a job's functional demands as that job is generally performed in the national economy. *Id.* This is true even if the claimant is unable to perform the full extent of functional demands that were required for their past work. *Id.*

"[T]he DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). Accordingly, the testimony of a VE is valuable because the VE "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The VE "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Id.* A VE's testimony about a claimant's ability to perform a job as it is generally performed in the national economy is a sufficient basis upon which the ALJ may rely to determine that an appropriate job for the claimant exists. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995).

The VE testified based on his review of William's Work History Report and his familiarity with jobs in the national economy. Tr. 66–67; Work History Report, Tr. 392–99. In the Work History Report, William described his role as Senior Marketing Manager. He stated that in the role, he "would stand and walk for

16

four hours per day, lift ten pounds frequently, and up to [twenty] pounds." ECF No. 12-1 at 12 (citing Tr. 397).

Based on William's description of his work in his Work History Report, the VE classified the role as "marketing manager, oil field services . . . DOT number 163.167-018." Tr. 67–68. The VE testified that the occupation is sedentary as it is customarily, or generally, performed, but that William indicated that he performed the role at the light exertion level. Tr. 68. Accordingly, under the "sedentary" RFC, the VE testified that the hypothetical claimant would be able to perform the role as it is generally performed, but not as William had actually performed it. Tr. 69–70.

On cross-examination, William's attorney engaged the VE in a lengthy discussion concerning his classification of William's past work. Tr. 78–83. William's attorney pressed the VE about whether the DOT's "marketing manager" description aligned with William's work as an oil-field marketing manager. *Id.* The VE repeatedly acknowledged that William performed the role at a light-exertional level, but that the position, as it is generally performed in the national economy, is classified as sedentary. Tr. 79, 81, 82. At one point, the ALJ even interrupted the questioning to clarify the VE's testimony:

> ALJ: [F]or hypothetical number one, you said [William] could perform the past relevant work, as I understand it . . . as [it is] customarily performed. . . . But that is not as he performed it. . . . Am I correct . . . ?
>
> VE: I did, Your Honor.

Tr. 81. When William's attorney pressed the VE about William's statement that "he had to lift parts for oil field products," the VE told the attorney that William should be the one to testify about how he actually performed the job. Tr. 80. The ALJ agreed,

17

advising the attorney, "If you, you know, disagree with [the VE's] testimony and want to elicit clarity through the claimant, you can certainly do that, counsel." Tr. 83.

William testified that as a marketing manager, he spent the "majority of the time" in the office. Tr. 83. But he stated that the job "required some lifting" and setting up for events, which involved "climbing ladders and doing some things . . . ." *Id.* The ALJ again jumped in to say:

> Let me just say this one thing. I think [the VE] did indicate that the claimant -- [the VE] said not as he performed it, but as customarily performed. . . . [William], once again, is describing as he performed it. And so, I am not sure what we are accomplishing with this line of testimony.

Tr. 84.

To establish that the position was a composite job, William had to show that it involved significant elements of two or more occupations. POMS DI 25005.020(B); *see also Finch*, 2024 WL 2368475, at *3. He did not, and still has not, done so. It is not sufficient to assert, as William did in his post-hearing objection, that the DOT description does not reflect all of the duties that he was tasked with. *See* Tr. 475. While William has shown that he had some additional tasks outside of the DOT's description, he has not established that they were significant elements of his role. The fact that William's past work had duties outside of the DOT classification does not automatically render it a composite job. *See Finch*, 2024 WL 2368475, at *3.

Moreover, despite the ALJ's failure to directly rule on William's objection, it is clear that she considered the "composite job" argument. During the hearing, William's attorney made the argument that William's work as a marketing manager was "really more of a composite job." Tr. 85. The ALJ clearly considered the argument, as it prompted the ALJ to ask the VE whether the

18

argument, along with William's testimony, had changed the VE's testimony in any way. *Id.* The VE responded by reaffirming his testimony, stating, "Your honor, my understanding and my role is to explain to you how the claimant performed his or her occupation and then to tell you, based on the information in the [DOT], how it is most often customarily performed, and that is what I did." *Id.* William's attorney then made a "general objection" that William "would not be able to perform a regular marketing job or a regional sales job and that he had no experience doing either of those." *Id.* At that time, the ALJ noted William's attorney's "concern with [the VE's] testimony." Tr. 86. The ALJ heard the testimony, read the record, considered the argument, and made a decision. That is the ALJ's role. The court does not substitute its judgment or weigh the evidence. The court's role is to decide whether the ALJ's decision is supported by substantial evidence. It is.

The ALJ also made William's post-hearing brief and objections part of the record by including it as an exhibit to her report. Tr. 30. She represented that she carefully considered the entire record in making her decision. Tr. 21. The court has no reason to doubt this. *See e.g.*, *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (finding no reason to dispute the ALJ's assertion that his decision was based on "careful review of the evidence"); *Robinson v. Saul*, No. 19-2695, 2020 WL 4480872, at *4 (S.D. Tex. July 14, 2020) ("As long as the decision is supported by substantial evidence, the Court accepts the ALJ's representation that he 'carefully considered the evidence of record in its entirety.'").

Nevertheless, the ALJ ultimately rejected the "composite job" argument and, instead, adopted the VE's testimony as the basis for her step-four decision. She compared William's RFC with the physical and mental demands of the marketing manager role

19

and concluded that, during the period of disability, William was able to perform that role as it is generally performed. Tr. 24.

Substantial evidence supports the ALJ's decision to not classify William's prior role as Senior Marketing Manager as a composite job. The VE testified about William's ability to perform the job as it is generally performed. His testimony provided a sufficient basis upon which the ALJ could rely in formulating her decision. William, himself, even conceded that the DOT's marketing-manager description accounted for "many of the duties" he had described in his Work History Report. ECF No. 12-1 at 13.

Therefore, the ALJ's failure to rule on William's objection to the VE's classification does not "cast into doubt the existence of substantial evidence to support the ALJ's decision." At best, William's argument that the ALJ did not consider the vocational opinion attached to his post-hearing brief raises an evidentiary conflict. The Commissioner has the discretion to resolve any conflicts in the evidence. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The ALJ did not err in according little or no weight to Ms. Benchich's opinion. The court notes that the opinion is somewhat conclusory and appears to be based on the facts the ALJ and the VE had already considered. It adds little to the analysis. The ALJ's step-four decision is supported by substantial evidence from the hearing testimony and the record. It is not in error.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in significant numbers in the national economy, the claimant is not disabled. *Id.* (citing 20 C.F.R. § 404.1520(g)).

The ALJ's only step-five findings pertained to the period after the closed period of disability, from January 15, 2022, through the date of the hearing. The ALJ did not make step-five findings for the closed period of disability. Because William was found to be "not disabled" during the closed period of disability in step four, the ALJ was not required to proceed to step five. The ALJ did not err.

### 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c).

Accordingly, William's Motion for Summary Judgment, ECF No. 12, is **DENIED**. Commissioner's Cross Motion for Summary Judgment, ECF No. 14, is **GRANTED**, and the Commissioner's final decision is **AFFIRMED**.

A separate final judgment will be entered.

Signed at Houston, Texas, on March 18, 2026.

_____
Peter Bray
United States Magistrate Judge

21